UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **NICOLE VITALE,** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| V. | : | |
| | : | ***JURY TRIAL DEMANDED*** |
| **EQUINOX HOLDINGS, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## **COMPLAINT**

Plaintiff Nicole Vitale, through her attorneys Lucas & Varga LLC and Sapir Schragin LLP, hereby alleges as follows:

### ***PRELIMINARY STATEMENT***

This action seeks damages arising out of defendant's discrimination in plaintiff's employment and for retaliation in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and New York City Human Rights Law.

### ***PARTIES***

1. Plaintiff Nicole Vitale is a female citizen of the State of Connecticut, currently residing in Greenwich, Connecticut.

2. Defendant Equinox Holdings, Inc. ("defendant" or "Equinox") is a Delaware corporation having its principal place of business at 895 Broadway, 3rd Floor, New York, New York. At all times relevant hereto, defendant was in the business of owning and operating fitness clubs in the United States, the United Kingdom, and Canada, offering services in the areas of barre, conditioning, martial arts, Pilates, yoga, studio cycling and spa services. It has locations in Massachusetts, Illinois, Connecticut, Florida, New Jersey, New York, Northern California,

Southern California, Texas, and Washington D.C.; London, United Kingdom; and Vancouver and Toronto, Canada.

## JURISDICTION AND VENUE

3. Jurisdiction over the subject matter of this litigation exists under Title VII, 42 U.S.C. §2000e, *et seq*. As to those claims not arising under federal law but clearly so related to the claims in this action within the original jurisdiction of this Court, jurisdiction exists under the doctrine of supplemental jurisdiction as codified in 28 U.S.C. §1367.

4. Plaintiff timely filed administrative charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about June 3, 2016, and has received a Notice of Right to Sue letter from the EEOC dated January 27, 2017, a copy of which is attached hereto as Exhibit A.

5. Venue is proper in this District pursuant to 28 U.S.C. §§1391(b)(1) and (2), as the unlawful conduct complained of herein took place within the Southern District of New York and defendant resides in this District.

## STATEMENT OF FACTS

6. Plaintiff began her employment with Equinox in March 2010 in the role of Senior Director, Spa. At all times relevant to this lawsuit, plaintiff worked out of Equinox's offices in New York City.

7. As Senior Director, plaintiff initially reported directly to Scott Rosen, Executive Vice President and Chief Operating Officer.

8. In 2009, plaintiff had interviewed for a Vice President of Sales position. Equinox hired a male for that position. After plaintiff started in the Senior Director role, one of plaintiff's colleagues said to her, "Nicole, they would never hire a woman for that [VP] position."

9. By all measures, plaintiff performed her duties as Senior Director exceptionally well. Mr. Rosen gave plaintiff continual positive feedback and, when plaintiff reported directly to him, significant raises and bonuses.

10. In early 2014, plaintiff was told she would be reporting to a new male hire, Mr. Patrik Hellstrand, who was placed above plaintiff into the role of Group Vice President, Operations.

11. Mr. Hellstrand joined Equinox with little specific experience and after numerous short stints in prior employment situations. He reported directly to Mr. Rosen.

12. As of early 2014, plaintiff had been on track for promotion to the Vice President level, a level plaintiff has held in several previous jobs.

13. Upon commencing his employment, and before even completing his on-boarding process, Mr. Hellstrand's sexism became evident. He told plaintiff he would like to support her for promotion to Vice President, but in his opinion plaintiff was "too emotional."

14. This sexism was further evidenced by his repeated references to plaintiff as "young lady," despite the fact she was 43 years old. This led plaintiff to lodge a written complaint in August of 2014. Mr. Hellstrand referred to Ms. Tracy Gavin-Bridgman, the former Senior Director of Retail, in a similar sexist fashion as well.

15. Mr. Hellstrand's behavior was dismissed by Equinox as a "cultural thing," and plaintiff's request for a new manager was summarily denied. No corrective action was taken.

16. Mr. Hellstrand was informed of plaintiff's formal complaint, and as a result, he told plaintiff he was "not comfortable" talking to plaintiff outside the presence of Mr. Rosen or Human Resources.

17. Plaintiff in turn was told by defendant that she was expected to "work through [her] style differences" with Mr. Hellstrand.

18. The foregoing circumstances led to a strained relationship between Mr. Hellstrand and plaintiff, although plaintiff did her best to move on.

19. Mr. Hellstrand continued to display contempt and a sexist attitude and to exclude plaintiff from meetings in which plaintiff should have been involved, and to otherwise fail to properly include or communicate with her. Instead, Mr. Hellstrand sought and solicited complaints from her peers to use against her.

20. Little was done by defendant to curb this sexist and confrontational attitude, which, unfortunately, was endemic to the Equinox organization. By way of examples, one of plaintiff's female subordinates told plaintiff that she felt uncomfortable in a strategic objectives meeting conducted by Equinox management. The subordinate complained that the meeting was filled with males cursing and using inappropriate speech, all of which she summed up as a "swinging dicks club."

21. In addition, plaintiff learned from her peers that sales functions or celebrations often included company-paid trips to strip clubs.

22. Equinox also tolerated interoffice dating to the extent of obvious extramarital affairs.

23. This sexism permeated the highest levels of the company. One high-ranking official directed Mr. Lawrence Sanders, an Equinox Regional Director, to obtain telephone numbers from attractive female members he identified.

24. Company promotions were more readily granted to males, as evidenced by company statistics showing a dearth of females in senior management.

25. Attempts to retain women in upper management have proven unsuccessful, one would suspect for just these reasons, as evidenced by the departures of Ms. Sarah Robb O'Hagan, former President, and Ms. Renee Durocher, former CIO.

26. In discussions with a female Human Resources Director at the company, plaintiff noted the absence of females in the Regional Director, Area Director and Vice President levels and the fact plaintiff had not been promoted in six years despite good performance and prior experience in such positions. The Human Resources official agreed the company had a gender issue; that the way female employees are spoken to is often very demeaning; and that this is so prevalent, the males do not even realize they are doing it.

27. Another example of Equinox's sexist culture occurred in 2016, when defendant's Vice President of Public Relations (male) circulated, with pride, the fact that Kanye West, in his new album, referenced Equinox as follows:

> "I need every bad bitch up in Equinox
> I want to know if you are a freak or not"

This company executive stated how this publicity increased membership interest and was a good thing, with Equinox responding timely and "appropriately" with a "playful" response.

28. In late 2015/early 2016, plaintiff was approached by one of her subordinates who was upset. She told plaintiff a coworker and a Senior Director of Human Resources were soliciting negative comments about plaintiff, and that it seemed like a witch hunt. This subordinate was told there was an inquiry being undertaken with regard to plaintiff's conduct instigated by Mr. Hellstrand due to negative comments he had received from plaintiff's coworkers. Plaintiff was then contacted by Mr. Hellstrand about an anonymous complaint against her. Plaintiff requested, but failed to receive, any details about this accusation. Plaintiff responded by telling Mr. Hellstrand

5

he was sexist and engaged in demeaning conduct. Mr. Hellstrand insisted he said he saw nothing wrong with the manner in which he treated plaintiff.

29. Plaintiff again lodged a formal complaint with Mr. Rosen and Human Resources on March 25 of 2016 concerning Mr. Hellstrand's treatment of her. Mr. Greg Hill, Senior Vice President, Human Resources, in the presence of Mr. Rosen, actively discouraged plaintiff from calling it an "official" claim of sexism and harassment and admonished plaintiff to be careful about what she started.

30. Incident to the admonishment, plaintiff again requested to be reassigned out of a reporting relationship to Mr. Hellstrand.

31. Plaintiff's transfer request was summarily and immediately denied, and her complaint resulted in a subsequent "investigation," consisting solely of a transparently-inadequate inquiry into Mr. Hellstrand's conduct by a complicit member of Human Resources. The "investigation" culminated just three days later, on March 28, 2016, with a memorandum from Mr. Hill, copying Mr. Rosen, failing to find "any grounds for a hostile environment."

32. Perhaps plaintiff should have heeded the warnings of Mr. Hill to be careful about lodging a "formal" hostile environment claim, as a few short weeks after plaintiff's formal complaint, for the first time in plaintiff's career, plaintiff was given a rating of "Below Expectations" during her annual review and was not given any increase in salary moving forward.

33. This retaliatory conduct was sanctioned by Mr. Rosen, who was an active participant in the salary decision and in plaintiff's review.

34. Through counsel, plaintiff asked Human Resources to conduct an additional investigation into the sexist atmosphere at Equinox, her treatment, and the retaliatory conduct of her supervisor.

35. As a result, plaintiff was told her performance was inadequate and her job security was expressly threatened.

36. In the meantime, Equinox threw a birthday party for the Vice President of Sales, Barry Holmes, a participant in the strip club jaunts run through sales expenses. The party featured a cake in the shape of a woman's buttocks barely covered by a thong.

37. Plaintiff then filed her EEOC Complaint Affidavit, with a copy to Equinox's counsel tendered simultaneously therewith.

38. Within approximately one week, plaintiff was formally placed onto a performance improvement plan in which plaintiff was directed to report all of her daily activities to her supervisor, Mr. Hellstrand, and to meet with him weekly. Plaintiff thereafter was subject to undue and continuing criticism by the Senior Director of Human Resources, Mr. Matthew Herbert, and plaintiff was the victim of harassing and inaccurate criticisms of her performance.

39. Efforts to respond to the foregoing, both by meeting impossible performance timetables and metrics and by trying to get the harassment to cease, were met with increasing criticisms and demands by Mr. Hellstrand. No corrective action was taken by Mr. Herbert, the controlling Human Resources professional, who instead joined in the criticisms.

40. Ultimately, after several memoranda from plaintiff detailing the factual inaccuracies of the performance memoranda created by Mr. Hellstrand and Mr. Herbert, and protesting the retaliatory actions of Equinox, plaintiff was summoned to a meeting with Scott Rosen and told she was being terminated effective immediately. The termination occurred on July 14, 2016, a little over four weeks after plaintiff's EEOC filing.

41. Plaintiff then received notification that defendant was calling her vested stock options as well, forcing plaintiff to issue a check for same for an exorbitant sum not clearly based on fact, or to lose them completely.

### FIRST COUNT
### (42 U.S.C. §2000e, Title VII – Discrimination)

42. Plaintiff hereby repeats and realleges paragraphs 1 to 41 as if more fully set forth herein.

43. Defendant is an "employer" as defined by 42 U.S.C. §2000e(b). Likewise, plaintiff was an employee of defendant, as that term is defined in 42 U.S.C. §2000e(f).

44. Defendant at all times relevant hereto has employed more than 15 employees.

45. Defendant's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of sex, and subjected her to a sexually hostile work environment, on a continuing basis throughout her employment, in violation of Title VII.

46. Defendant, in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite defendant's knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex, in violation of Title VII.

47. As a result of the behavior of its agents and employees, defendant subjected plaintiff to illegal discrimination. Moreover, defendant, through the actions of its agents and employees, unreasonably interfered with plaintiff's work performance.

48. Plaintiff's complaints of discrimination were used by defendant as a basis for adverse employment decisions affecting plaintiff, including, but not limited to, termination of her employment.

49. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## *SECOND COUNT*
*(New York State Human Rights Law, N.Y. Exec. L §§ 290, et seq.*
*Unlawful discrimination)*

50. Plaintiff hereby repeats and realleges paragraphs 1 to 41 as if more fully set forth herein.

51. Defendant is an employer as defined by N.Y. Exec. L. § 292(5).

52. Plaintiff, at all times relevant to this lawsuit, was an employee of defendant as that term is defined in N.Y. Exec. L. § 292(6).

53. Defendant's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of sex, and subjected her to a sexually hostile work environment, on a continuing basis throughout her employment, in violation of N.Y. Exec. L. § 296.

54. Defendant, in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite its knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex, in violation of N.Y. Exec. L. § 296.

55. As a result of the behavior of its agents and/or employees, defendant unreasonably interfered with plaintiff's work performance, and plaintiff's complaints of discrimination were used by defendant as a basis for adverse employment decisions affecting plaintiff, including but not limited to the termination of her employment.

56. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

***THIRD COUNT***
***(New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, et seq.***
***Unlawful Discrimination)***

57. Plaintiff hereby repeats and realleges paragraphs 1 to 41 as if more fully set forth herein.

58. Defendant is an employer as defined by N.Y.C. Admin. Code § 8-102(5).

59. Plaintiff, at all times relevant to this lawsuit, was an employee of defendant within the meaning of the New York City Human Rights Law.

60. Defendant's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of sex, and subjected her to a sexually hostile work environment, on a continuing basis throughout her employment, in violation of N.Y.C. Admin. Code § 8-107.

61. Defendant, in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite its knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex, in violation of N.Y.C. Admin. Code § 8-107.

62. As a result of the behavior of its agents and/or employees, defendant unreasonably interfered with plaintiff's work performance, and plaintiff's complaints of discrimination were used by defendant as a basis for adverse employment decisions affecting plaintiff, including but not limited to the termination of her employment.

63. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## FOURTH COUNT
### (42 U.S.C. §2000e-3 (Title VII) – Retaliation)

64. Plaintiff hereby repeats and realleges paragraphs 1 to 41 as if more fully set forth herein.

65. Plaintiff repeatedly complained to defendant's management about the discriminatory manner in which she was being treated.

66. As a result of plaintiff's complaints of sex discrimination, defendant retaliated against plaintiff by, *inter alia*, (a) unduly criticizing plaintiff, placing her on a performance improvement plan, and failing to allow her to perform her duties, (b) refusing to address or adequately investigate her concerns, (c) refusing to substantially address plaintiff's complaints, (d) terminating plaintiff's employment, and (e) forcing a buyout of her vested stock.

67. The actions of defendant were taken in retaliation for plaintiff's effort to protect her rights and the rights of other employees, in violation of 42 U.S.C. §2000e-3, Title VII.

68. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## FIFTH COUNT
### (New York State Human Rights Law, N.Y. Exec. L. § 290, et seq. Retaliation)

69. Plaintiff hereby repeats and realleges paragraphs 1 to 41 and 55, 62, 65-67 as if more fully set forth herein.

70. The actions of defendant were taken in retaliation for plaintiff's efforts to protect her rights and the rights of other employees to be free from illegal discrimination on the basis of sex, and as such, defendant's actions were in violation of N.Y. Exec. L. § 296.

71. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## SIXTH COUNT
*(New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.*
*Retaliation)*

72. Plaintiff repeats and realleges paragraphs 1 to 4 and 55, 62, 65-67 as if more fully set forth herein.

73. The actions of defendant were taken in retaliation for plaintiff's efforts to protect her rights and the rights of other employees to be free from illegal discrimination on the basis of sex, and as such, defendant's actions were in violation of N.Y.C. Admin. Code § 8-107.

74. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

***WHEREFORE,*** plaintiff demands:

1. Statutory compensatory and punitive damages under federal law;

2. Equitable relief in the form of reinstatement or front pay, as considered appropriate by the Court;

3. Attorneys' fees, expert witness fees, and costs of this action, pursuant to 42 U.S.C. §1988;

4. Compensatory damages, including loss of enjoyment of life, emotional pain and suffering, back pay, bonuses, and the value of all other employment benefits in an amount to be determined by the trier of fact, with interest from the date when said sums were due;

5. Actual and compensatory damages under New York State Human Rights Law;

6. Actual, compensatory and punitive damages under New York City Human Rights Law;

7. Attorney's fees pursuant to New York State Human Rights Law and New York City Human Rights Law;

8. Prejudgment interest and costs;

9. An injunction permanently enjoining the defendant, its agents, employees, successors, assigns and all persons who acted in concert and participation with defendant, from engaging in any employment practice which discriminates on the basis of sex; and

10. Such other and further relief as this Court shall deem just and proper.

The plaintiff demands a trial by jury on all counts.

Dated: White Plains, New York
March 10, 2017

By *Howard Schragin*
Howard Schragin, Esq. (Bar No. HS2597)
SAPIR SCHRAGIN LLP
399 Knollwood Road, Suite 310
White Plains, NY 10603
Phone: (914) 328-0366
Fax: (914) 682-9128
hschragin@sapirschragin.com

AND

Scott R. Lucas, Esq. (Bar No. SL9745)
Douglas J. Varga, Esq. (Bar No. DV5312)
LUCAS & VARGA LLC
2425 Post Road, Suite 200
Southport, CT 06890
Phone: (203) 227-8400
Fax: (203) 227-8402
slucas@lucasvargalaw.com
dvarga@lucasvargalaw.com

***Attorneys for Plaintiff***